

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 02, 2026.**

_____
**CRAIG A. GARGOTTA
CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-52489-cag |
| | § | |
| CYNTHIA M. DAVIS, | § | |
| | § | Chapter 13 |
| | § | |
| Debtor. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S SECOND AMENDED OBJECTION TO EXEMPTION (ECF NO. 109)**

Came to be considered Chapter 7 Trustee's ("Trustee") Objection to Exemption (ECF No. 53), Debtor Cynthia M. Davis's ("Debtor") Response to Trustee's Objection to Exemption (ECF No. 55), and Trustee's Second Amended Objection to Exemption (ECF No. 109).[1] The Court held a hearing on the Trustee's objection to exemption on December 2, 2025, and took the matter under advisement. Based on the record evidence and parties' arguments and pleadings, the Court grants in part and denies in part Trustee's Second Amended Objection to Exemption.

---

[1] "ECF No." refers to the electronic case file docket number.

JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(B) (allowance or disallowance of exemptions). Venue in this district is proper under 28 U.S.C. § 1408. This case is referred to this Court pursuant to the District Court's Standing Order of Reference.

BACKGROUND AND PARTIES' CONTENTIONS

Debtor filed for chapter 13 bankruptcy on December 3, 2024. (ECF No. 1). Debtor filed her schedules and statement of financial affairs on that same date. (ECF No. 1). Debtor amended her schedules and statement of financial affairs on February 28, 2025. (ECF No. 32). Trustee timely filed the Objection to Exemption on April 7, 2025. (ECF No. 53). Debtor filed a response on April 11, 2025. (ECF No. 55). Trustee amended her Objection to Exemption on November 20, 2025, and amended again four days later. (ECF Nos. 105, 109).

On Debtor's schedules, Debtor chose Texas state exemptions.[2] (ECF No. 32 at 12–14). Among a number of claimed exemptions, Debtor claimed the property located at 313 Big Meadows Drive, Bandera, Texas 78003 ("Big Meadows Property") as her homestead and therefore exempt under Tex. Const. art. XVI, §§ 50, 51 and Tex. Prop. Code. §§ 41.001, 41.002. (*Id.*). Debtor also claimed as exempt $416.35 in social security benefits under 42 U.S.C. § 407 and a life insurance policy with an "unknown" value under Tex. Ins. Code §§ 1108.001, 1108.051. (*Id.*).

Trustee argues (1) Debtor was not domiciled in Texas for the requisite statutory period and therefore cannot avail herself of Texas exemptions under 11 U.S.C. § 522(b)(3)(A); (2) in the alternative, Debtor cannot claim the Big Meadows Property as her homestead under Texas law;

---

[2] "Under the United States Bankruptcy Code, states may either opt into the federal exemption slate, or opt out, and allow only the state's bankruptcy exemption slate." **Lowe v. Jones**, No. 1:22-CV-862, 2023 WL 4533380, at *1 (W.D. Tex. July 13, 2023) (citing 11 U.S.C. § 522(b)). "Texas is an 'opt in' state, allowing debtors to choose either the federal or the state exemptions." *Id.* (citing **In re Bounds**, 491 B.R. 440, 444 (Bankr. W.D. Tex. 2013)).

2

(3) Debtor cannot claim her social security benefits as exempt because they were commingled with non-exempt property in one bank account; (4) Debtor cannot claim her life insurance policy as exempt with a listed value of "unknown" under Tex. Ins. Code §§ 1108.001, 1108.051. (ECF No. 109). Debtor responds (1) Debtor is domiciled in Texas and never abandoned her domicile in Texas; (2) the Big Meadows Property is Debtor's homestead, and she never abandoned it; (3) commingling of social security benefits with non-exempt property does not destroy the exempt nature of social security benefits; (4) the insurance policy is 100% exempt, so the value of the policy is irrelevant. Further, a term life insurance policy has no value until Debtor is deceased.[3] (ECF No. 55).

## DISCUSSION

**I.   The Big Meadows Property is not exempt from the bankruptcy estate.**

The Court finds that the Big Meadows Property is not exempt from the bankruptcy estate. The Court finds that Debtor was domiciled in Texas at the time of filing and therefore may avail herself of Texas state exemption laws. Debtor failed to demonstrate, however, that the Big Meadows Property is her homestead.

> *A.   Debtor may avail herself of Texas state exemption laws as Debtor's domicile was Texas for the required period of time before filing under § 522(b)(3)(A).*

Debtor may avail herself of Texas state exemption laws, as Debtor's domicile was Texas for the 730 days immediately preceding the date of Debtor's bankruptcy filing under 11 U.S.C. § 522(b)(3)(A). Under § 522(b)(3)(A), an individual debtor may exempt:

> [S]ubject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the

---

[3] Debtor did not respond to Trustee's domicile claim in Debtor's response because Trustee first made her domicile argument in her First Amended Objection to Exemption, which was twelve days before the hearing. (ECF No. 105). Nonetheless, Debtor addressed the domicile issue at the hearing, and the Court considered Debtor's arguments.

3

petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

11 U.S.C. § 522(b)(3)(A). In other words, § 522(b)(3)(A) allows a debtor to exempt property according to state exemption laws of the state the debtor has been domiciled in for at least 730 days preceding the date of filing. *See* **In re Garrett**, 435 B.R. 434, 438 (Bankr. S.D. Tex. 2010). "The 'snapshot rule' of bankruptcy law holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events." ***Viegelahn v. Frost (In re Frost)***, 744 F.3d 384, 386 (5th Cir. 2014). It is undisputed Debtor's domicile was Texas before her move to Oregon.[4] Trustee alleges Debtor was domiciled in Oregon for the 730-day statutory period before filing and therefore cannot invoke Texas state exemption laws. (ECF No. 109 at 2; Trial Tr. 55:17–23, ECF No. 118). Based on the evidence, Trustee is incorrect.

"Federal common law governs the meaning of domicile for purposes of section 522 of the Bankruptcy Code." **In re Mendoza**, 597 B.R. 686, 688 (Bankr. S.D. Fla. 2019) (citing *Collier on Bankruptcy* ¶ 522.06 n.16 (16th ed. 2018)); *see also* **Miss. Band of Choctaw Indians v. Holyfield**, 490 U.S. 30, 43 (1989) (finding federal common law applies when interpreting "domicile" in a federal statute absent clear congressional intent to the contrary). "A person's domicile is the place of 'his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom[.]'" **Mas v. Perry**, 489 F.2d 1396, 1399

---

[4] Trustee appears to not dispute Debtor's domicile was Texas before her move to Oregon. But if this is not the case, the Court finds Debtor was domiciled in Texas when she filed for bankruptcy in Texas in 2009. (Trustee's Ex. 4 at 1). Debtor resided in Texas in 2009. (See address in Trustee's Ex. 3 and Ex. 4). Debtor had the intent to remain in Texas. In her 2009 Texas bankruptcy case, the court found, "[Debtor] had arranged for her mother (Esther V. Pendleton, a resident of Washington State) to purchase the home. Pendleton had plans to move to Texas and to live with her daughter and grandchildren in the Dover home." (Trustee's Ex. 1 at 1). The Dover home was Debtor's address on record for the 2008 and 2009 bankruptcy case, and Debtor had paid for the down payment for this home. (*See* Trustee's Ex. 1 at 2; Trustee's Ex. 3 at 1; Trustee's Ex. 4 at 1). For the foregoing reasons, Debtor was domiciled in Texas in 2009.

4

(5th Cir. 1974) (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)). An individual's "domicile persists until a new one is acquired or it is clearly abandoned." *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996). "A change of domicile may be effected only by a combination of two elements: (a) taking up residence in a different domicile with (b) the intention to remain there." *Mas*, 489 F.2d at 1399. In other words, "mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent." *Coury*, 85 F.3d at 250. The Court applies this test to determine whether Debtor changed her domicile.

*1. Debtor resided in Oregon for a part of the 730-day statutory period.*

Debtor resided in Oregon during at least a part of the 730-day period. Debtor filed for bankruptcy in this Court on December 3, 2024. (ECF No. 1). In Debtor's 2023 bankruptcy filing in the District of Oregon, Debtor claimed in her petition, "Over the last 180 days before filing this petition, I have lived in this district longer than in any other district." (Trustee's Ex. 8, Official Form 101 at 2). Debtor claimed to live at an Oregon address with an Oregon mailing address. (*Id.*). Debtor further stated, under penalty of perjury, that she had lived only in Oregon for the past three years.[5] (Trustee's Ex. 8, Official Form 107 at 1, Official Form 101 at 2). In a 2024 state court case, a few months before filing this bankruptcy case, Debtor filed a motion to transfer venue from Tarrant County, Texas to Klamath County, Oregon. (Trustee's Ex. 17 at 2). Debtor claimed, "Defendant [Debtor] resides in the State of Oregon, Klamath County." (*Id.*). Therefore, the first requirement of "taking up residence in a different domicile" is met. *Mas*, 489 F.2d at 1399. Debtor resided in Oregon for at least a part of the 730-day statutory period before filing.

---

[5] In this current 2024 bankruptcy case, Debtor claims under penalty of perjury that she has lived nowhere else but Texas over the past three years. (Trustee's Ex. 12, Official Form 107 at 1; ECF No. 32, Official Form 107 at 1).

5

*2. Debtor did not have the requisite intent to change her domicile to Oregon.*

Although Defendant resided in Oregon for at least a part of the 730-day statutory period, the evidence does not show Debtor had the requisite intent to change her domicile to Oregon. Determining an individual's intent to change her domicile requires consideration of various factors, and courts should examine all probative evidence. *Coury*, 85 F.3d at 251. "No single factor is determinative." *Id.* "The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." *Id.*

Here, in Debtor's 2023 bankruptcy filing in the District of Oregon, Debtor stated she lived nowhere else but Oregon over the past three years. (Trustee's Ex. 8, Official Form 107 at 1, Official Form 101 at 2). This indicates Debtor lived in Oregon for several years, which is probative of her intent to remain in Oregon indefinitely. On her 2023 schedules, Debtor stated she had not lived in a community property state within the last eight years. (Trustee's Ex. 8, Official Form 106H). The form explicitly lists Texas as a community property state. (*Id.*). This is probative of Debtor's intent to abandon Texas as her domicile. In Debtor's bankruptcy petition for the present case, Debtor listed the Big Meadows Property, located in Texas, as her home address but listed an Oregon P.O. box as her mailing address. (Trustee's Ex. 12, Official Form 101 at 2). This indicates that, while Debtor claimed to live in Texas, she preferred to receive mail in Oregon. In her 2023 federal income tax filing, Debtor provided an Oregon home address. (Trustee's Ex. 14 at 1). Debtor filed

6

Oregon state income taxes in 2023, providing an Oregon P.O. box mailing address. (Trustee's Ex. 15 at 1). Debtor's tax filings further reinforce Debtor's stay in Oregon was not temporary.

Debtor maintains bank accounts only with Mid Oregon Credit Union. (Trustee's Ex. 12, Official Form 106A/B at 4).[6] This is probative of Debtor's intent to change her domicile to Oregon. Debtor's food trailer business, Mrs. Smallz, operates out of Oregon. (*See* Trustee's Ex. 12, Official Form 101 at 4; Trustee's Ex. 18 at 1–2). Debtor's food trailer business takes her all over the country for long periods of time, as she provides food for events such as endurance horse rides. (Trial Tr. 141:6–142:3, ECF No. 118; Trial Tr. 143:7–145:25, ECF No. 118). Thus, while the fact that Debtor's business is based in Oregon is probative of Debtor's residence in Oregon, it is less probative of Debtor's intent to remain in Oregon indefinitely due to the mobile nature of her business.[7] The Big Meadows Property is essentially Debtor's only remaining connection with Texas. Debtor attempted to sell the Big Meadows Property in 2023, albeit for the purpose of paying creditors in her Oregon bankruptcy case. (Trustee's Ex. 9; Trial Tr. 104:17–106:16, ECF No. 118). This is probative of Debtor's intent to abandon her domicile in Texas.

On the other hand, Debtor claims the Big Meadows Property is her principal home. (Trial Tr. 142:4–24, ECF No. 118). She claims to have owned no other property since 2012. (Trial Tr. 142:4–11, ECF No. 118). When asked if her actions showed a change of intent for the Big Meadows property to be her homestead, Debtor stated, "I don't believe so. I mean, I -- it's where my bed is. It's where my furniture is. It's where my excess belongings are. That's -- I mean, it's where I go back to. That's the only place I got. I don't have any other place to go." (Trial Tr.

---

[6] Debtor amended her schedules and statement of financial affairs. (ECF No. 32). All referenced material in Debtor's original schedules and statement of financial affairs are unchanged in Debtor's amended schedules and statement of financial affairs. (*Compare* Trustee's Ex. 12, *with* ECF No. 32).

[7] If Debtor operated a single brick-and-mortar store, this would be more probative of Debtor's intent to remain in Oregon indefinitely. Because Debtor's business can essentially be operated anywhere in the country, the fact that Debtor's business operates out of Oregon is of less probative value to Debtor's intent to change her domicile. Her business could operate out of any state Debtor happens to reside in at the time.

142:18–24, ECF No. 118). Debtor's testimony is questionable given the fact Debtor filed a state court motion to transfer venue from Texas to Oregon mere months before her bankruptcy filing in this case. (Trustee's Ex. 17 at 2). In her 2023 Oregon bankruptcy filing, Debtor claimed to have resided only in Oregon for the past three years. (Trustee's Ex. 8, Official Form 107 at 1, Official Form 101 at 2).

Despite Debtor's inconsistent testimony, the evidence is insufficient to show Debtor had the requisite intent to change her domicile to Oregon. Most of the evidence shows Debtor resided in Oregon for a certain period of time. The evidence does not show Debtor had the requisite intent to acquire a new domicile in Oregon or "clearly abandon" her domicile in Texas. ***Coury***, 85 F.3d at 250. There is not enough evidence to make such a finding. Based upon the admitted evidence, the Court cannot find Debtor had the requisite intent to change her domicile to Oregon. Therefore, the Court finds Debtor was domiciled only in Texas during the 730-day statutory period under § 522(b)(3)(A). Accordingly, Debtor may invoke Texas state exemption laws.

> B. The Big Meadows Property is not Debtor's homestead under Texas law and therefore not exempt from the bankruptcy estate.

The Big Meadows Property is not Debtor's homestead under Texas law and therefore not exempt from the bankruptcy estate because Debtor has not met her burden to establish a Texas homestead. "Bankruptcy courts must resort to state law for an interpretation of state exemption rights in homesteads." ***In re Moody***, 77 B.R. 580, 590 (S.D. Tex. 1987), *aff'd sub nom.*, ***Matter of Moody***, 862 F.2d 1194 (5th Cir. 1989). Article XVI, § 50 of the Texas Constitution provides in part, "The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts . . . ." Additionally, Section 41.001(a) of the Texas Property Code provides, "A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on

homestead property." Therefore, under Texas law, the homestead is exempt from the bankruptcy estate.

The Texas Constitution defines a homestead stating, "[T]he homestead in a city, town or village shall be used for the purpose of a home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant, whether a single adult person, or the head of a family . . . ." Tex. Const. art. XVI, § 51. Section 41.002 similarly provides a homestead is a place "used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business" or a place "used for the purpose of a rural home."[8] Tex. Prop. Code. § 41.002. "Because homesteads are favorites of the law, [courts] must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions." ***Bradley v. Pac. Sw. Bank, FSB (Matter of Bradley)***, 960 F.2d 502, 507 (5th Cir. 1992). Trustee argues Debtor does not have a valid homestead exemption for the Big Meadows Property because the property is not Debtor's homestead. (ECF No. 109 at 3). Trustee is correct.

"It is well settled in Texas that an individual who seeks homestead protection has the initial burden to establish the homestead character of her property."[9] ***Id.*** (citing ***Lifemark Corp. v. Merritt***, 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)). "Once the claimant has established the homestead character of her property, the burden shifts to the [objecting party] to disprove the continued existence of the homestead." ***Id.***; ***In re Crump***, 533 B.R. 567, 572 (Bankr. N.D. Tex. 2015) ("Once the proponent demonstrates that the property

---

[8] Section 41.002 also provides how large a homestead may be, depending on whether it is a rural home or an urban home. It outlines the requirements for an "urban" home. However, this is irrelevant here as Trustee's argument primarily relies on Trustee's claim that Debtor did not reside in the Big Meadows Property. Trustee does not argue that the property is too big for all of it to be considered the homestead.

[9] Fed. R. Bankr. P. 4003(c) provides in part, "[T]he objecting party has the burden of proving that an exemption was not properly claimed." However, the Fifth Circuit has held the initial burden of establishing homestead status is still on the claimant according to Texas law. In ***In re Perry***, the court explained, "Once the claimant has made a prima facie case in favor of homestead status, the objecting party has the burden of demonstrating that the homestead rights have been terminated." 345 F.3d 303 (5th Cir. 2003) (citing Fed. R. Bankr. P. 4003(c)).

9

is homestead, the burden shifts to the objecting party to prove that the homestead has ceased to exist."). "The initial burden to establish the homestead character of property is a short hurdle." *Bradley*, 960 F.2d at 507. Mere ownership is not enough to establish a property as one's homestead. *Romo v. Montemayor (In re Montemayor)*, 547 B.R. 684, 697 (Bankr. S.D. Tex. 2016) (citing *Sanchez v. Telles*, 960 S.W.2d 762, 770 (Tex. App.—El Paso 1997, pet. denied)). "Under Texas law, 'to establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *In re Thaw*, 620 F. App'x 304, 309 (5th Cir. 2015) (quoting *Sanchez*, 960 S.W.2d at 770); *see, e.g.*, *Vaden v. Collier*, 253 S.W. 889, 891 (Tex. App.—Fort Worth 1923, no writ) ("Preparations to improve property for use as a home, accompanied by an intention to make it a homestead, fixes a homestead right in it from that time."). "As long as the claimant can demonstrate that she has used her property for homestead purposes, then the Texas courts will presume that the homestead claimant possesses the requisite intent." *Bradley*, 960 F.2d at 507. Whether a property is a homestead is a question of fact. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 160 (Tex. 2015).

An expressed intent to establish a property as one's homestead, by itself, is not sufficient to establish a homestead, "as no one can know from an expressed intention alone whether it is true or not." *Jolesch & Chaska Co. v. Hampton*, 297 S.W. 271, 273 (Tex. App.—Waco 1927, writ ref'd). Therefore, Texas courts "require corroborative evidence in the nature of acts, of preparation, or efforts to so occupy, etc., in order to prove such good–faith intention." *Id.*; *see also Montemayor*, 547 B.R. at 697 (citing *Jolesch* and finding the same).

But in *Lifemark*, a Texas appellate court affirmed a lower court's finding of a valid homestead exemption where "the only evidence offered to establish the homestead claim was that

10

of the homestead claimant himself." 655 S.W.2d at 315. The objecting party argued the homestead claimant gave "no evidence or insufficient evidence" in claiming the property as his homestead, and therefore, that the trial court erred in making such a finding. *Id.* at 314. The court affirmed the trial court's finding of a valid homestead exemption, solely based on the claimant's testimony, reasoning, "As a general rule, evidence given by an interested witness is not conclusive although uncontradicted, and presents an issue of fact for determination by the trier of the facts." *Id.* at 316. In affirming the lower court's finding, the **Lifemark** court found it significant that the claimant's testimony was "free from contradiction." *Id.* The **Lifemark** court held Texas courts may find a claimant has met her initial burden of establishing a property as her homestead through testimony alone, at least when the testimony is free from contradiction. Therefore, it is unclear whether a claimant's own expressed intent of claiming a property as one's homestead, by itself, is enough to establish a homestead under Texas law.

While demonstrating "overt acts of homestead usage" through testimony alone appears antithetical to the rule's purpose, the Court need not resolve this split among Texas courts. Debtor fails to meet her initial burden of establishing the Big Meadows Property as her homestead under either approach.[10] If a claimant must provide corroborative evidence of overt acts of homestead usage to claim a property as her homestead, Debtor cannot prevail. The only evidence Debtor provides of using the Big Meadows Property as her homestead is her own testimony.[11] Regarding the property, Debtor claims, "[I]t's where my bed is. It's where my furniture is. It's where my excess belongings are. That's -- I mean, it's where I go back to. That's the only place I got. I don't

---

[10] While Debtor primarily argued there was no proof of abandonment, there was little information provided on whether the Big Meadows Property was Debtor's homestead in the first place.
[11] The Court looks to whether the property was Debtor's homestead at the time of filing. *See Frost*, 744 F.3d at 386 ("The 'snapshot rule' of bankruptcy law holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events.").

have any other place to go." (Trial Tr. 142:21–24, ECF No. 118). Debtor provides no other evidence of homestead usage. Therefore, Debtor's homestead claim fails under this approach.

Even if the *Lifemark* court's view is correct, Debtor still does not prevail on this issue. Unlike the *Lifemark* court, the Court does not find Debtor's testimony to be free from contradiction and finds Debtor failed to meet her initial burden of establishing the Big Meadows Property as her homestead. In coming to this conclusion, the Court found: (1) The evidence weighs against Debtor's specific claim that the Big Meadows Property is her homestead; (2) Debtor is not credible in general.

   1. *The evidence weighs against Debtor's claim that the Big Meadows Property is her homestead.*

The evidence weighs against Debtor's claim that the Big Meadows Property is her homestead. Debtor filed her present bankruptcy case on December 3, 2024, stating she resides at the Big Meadows Property. But Debtor listed her mailing address as an Oregon P.O. box: P.O. Box 3484. Debtor testified she gets her mail in Oregon "[b]ecause the mail system in Bandera, Texas, is fraught with theft. People steal mail all the time. The mailbox that is at the Bandera property is on a public street, and it's accessible to anybody that drives by there." (Trial Tr. 140:6–10, ECF No. 118). Therefore, Debtor chose to receive mail in Oregon while she claimed to live in Texas.[12] Further, Debtor's bankruptcy schedules demonstrate she pays no real estate taxes; no property, homeowner's, or renter's insurance; and no home maintenance, repair, and upkeep expenses. (Trustee's Ex. 12, Official Form 106J at 1–2.). On July 29, 2024, less than five months before Debtor's bankruptcy filing in this case, Debtor filed a motion to transfer venue from Tarrant County, Texas to Klamath County, Oregon in a state court proceeding. (Trustee's Ex. 17 at 2).

---

[12] The Court recognizes Debtor travels often for work. But the Court finds it troubling that Debtor's stated reason for her Oregon mailing address was the risk of theft at her Texas property. If this was the case, there are P.O. boxes in Texas Debtor could have used instead of receiving her mail in Oregon.

12

Debtor claimed, "Defendant [Debtor] resides in the State of Oregon, Klamath County." (*Id.*). The Big Meadows Property is in Bandera County, Texas. (Trustee's Ex. 2, Official Form 101 at 2).

On March 23, 2023, less than two years before filing for this current bankruptcy, Debtor filed for bankruptcy in the District of Oregon. (Trustee's Ex. 8, Official Form 101 at 1). In her filing, she stated she had resided only in Oregon for the past three years. (Trustee's Ex. 8, Official Form 107 at 1, Official Form 101 at 2). She listed an Oregon residential address and listed P.O. Box 3484 as her mailing address. (Trustee's Ex. 8, Official Form 101 at 2). On her 2023 schedules, Debtor stated she had not lived in a community property state within the last eight years. (Trustee's Ex. 8, Official Form 106H). The form explicitly lists Texas as a community property state. (*Id.*).

In the 2023 Oregon bankruptcy, Debtor chose the federal exemptions. (Trustee's Ex. 8, Official Form 106C at 1). Debtor did not claim the federal homestead exemption for the Big Meadows Property. (*Id.*). She instead claimed $15,088.19 of the value of the Big Meadows Property as exempt under 11 U.S.C. § 522(d)(5). (*Id.*). While Debtor lived in Oregon, she attempted to sell the Big Meadows Property in 2023 for her chapter 13 plan. (Trustee's Ex. 9; Trial Tr. 104:17–106:16, ECF No. 118). Debtor tried to accept an offer for the property. (Trial Tr. 105:19–106:10, ECF No. 118). The sale was scheduled for closing, but the Big Meadows Property could not be sold because of a purported lien on the property. (Trial Tr. 105:19–106:10, ECF No. 118). Debtor states, "The title company contacted [third party] to have her sign off on the lien, and she refused." (Trial Tr. 106:11–16, ECF No. 118).

Debtor's tax filings before the bankruptcy filing date also weigh against Debtor's argument that the Big Meadows Property is her homestead. On November 27, 2024, six days before filing bankruptcy for the present case, Debtor filed a 2023 Oregon Individual Tax Return for Full-year Residents. (Trustee's Ex. 15). Debtor listed P.O. Box 3484, the P.O. box in Oregon, as her mailing

13

address. (Trustee's Ex. 15 at 1). No other address was listed. In her 2023 federal tax filings she lists P.O. Box 3484 as her home address. (Trustee's Ex. 14 at 1). The only time Debtor lists the Big Meadows Property as her home address on or before the present case's bankruptcy filing date is on the bankruptcy petition itself. Even on the bankruptcy petition, the mailing address is listed as P.O. Box 3484. Therefore, the evidence weighs against Debtor's claim that the Big Meadows Property is her homestead.

    2. *Debtor is not credible.*

Not only does the evidence weigh against Debtor's specific homestead claim, but Debtor is also not credible in general. On March 23, 2023, Debtor filed a bankruptcy petition in the District of Oregon, stating she had lived nowhere else but Oregon over the past three years. (Trustee's Ex. 8, Official Form 107 at 1, Official Form 101 at 2). This would mean Debtor lived nowhere but Oregon at least from March 23, 2020, to March 23, 2023. On December 3, 2024, Debtor filed for bankruptcy in this Court. (Trustee's Ex. 12). In her statement of financial affairs, Debtor stated she lived nowhere else but Texas over the past three years. (Trustee's Ex. 12, Official Form 107 at 1). This would mean Debtor lived nowhere but Texas from December 3, 2021, to December 3, 2024. It is impossible to live "nowhere but Texas" and "nowhere but Oregon" at the same time. The two statements are contradictory. On July 29, 2024, less than five months before Debtor's bankruptcy filing in this case, Debtor filed a motion in a state court proceeding to transfer venue from a county in Texas to a county in Oregon. (Trustee's Ex. 17). Debtor claimed, "Defendant [Debtor] resides in the State of Oregon, Klamath County." (Trustee's Ex. 17 at 2). This claim is also directly contradictory with Debtor's representation that she lived nowhere but Texas for the past three years. Her conflicting statements to three different courts are seriously concerning. For the foregoing reasons, the Court does not find Debtor credible.

In sum, except for Debtor's own testimony, Debtor provides no evidence or overt acts of homestead usage supporting her claim that the Big Meadows Property is her homestead. The Court does not find Debtor to be credible, and the evidence weighs against Debtor's homestead claim. Therefore, the Court finds Debtor has failed to meet the initial burden of establishing the Big Meadows Property as Debtor's homestead. Accordingly, the Court finds the Big Meadows Property is not Debtor's homestead under Texas law.

II.     **Debtor's $416.35 in the Mid Oregon Credit Union checking account is exempt under 42 U.S.C. § 407.**

Debtor's $416.35 in the Mid Oregon Credit Union checking account is exempt under 42 U.S.C. § 407. Rule 4003(c) provides in part, "In a hearing under this Rule 4003, the objecting party has the burden of proving that an exemption was not properly claimed." In her schedules, Debtor claimed $416.35 in her Mid Oregon Credit Union checking account as exempt under 42 U.S.C. § 407. (Trustee's Ex. 12, Official Form 106C at 2). Trustee claims, "Debtor commingles her social security benefits with other income not subject to exemption. The funds have been commingled and as such all monies in the account do not have an exempt status." (ECF No. 109 at 5). "The appropriate standard of proof of which the trustee must satisfy is a preponderance of the evidence." **In re Sissom**, 366 B.R. 677, 689 (Bankr. S.D. Tex. 2007) (citing **In re Lacounte**, 342 B.R. 809, 813 (Bankr. D. Mont. 2005)). "Social Security benefits that are reasonably traceable retain their exemption, even if commingled with non-exempt funds in the same bank account." **In re Minc**, 673 B.R. 206, 213 (Bankr. E.D. Mich. 2025) (quoting **In re Lichtenberger**, 337 B.R. 322, 324 (Bankr. C.D. Ill. 2006)); *see also* **Sissom**, 366 B.R. at 701–702 (finding the commingling of exempt funds with non-exempt funds in the same bank account did not convert the exempt funds into non-exempt funds).

Here, Trustee provides no direct evidence Debtor's claimed social security benefits of $416.35 came from other sources of income. Trustee provides Debtor's bank statements from January 1, 2025, through September 30, 2025. (Trustee's Ex. 23). The bank statements show Debtor's social security funds were commingled with other bank deposits. (Trustee's Ex. 23). For example, Debtor received $1,191.07 in deposits in her checking account in January 2025. (Trustee's Ex. 23 at 1). Of the $1,191.07 in deposits, $1,131 was social security benefits, and $60.07 came from other sources. (Trustee's Ex. 23 at 1–2). But Debtor's petition date was December 3, 2024. (Trustee's Ex. 12). Trustee provides no direct evidence that any of the claimed $416.35 in the bank account on December 3, 2024, came from other sources of income. Therefore, the claimed $416.35 in Debtor's Mid Oregon Credit Union checking account is exempt under 42 U.S.C. § 407.

### III. Debtor must provide more information on her life insurance policy.

Debtor must provide more information on her life insurance policy. Debtor claims her life insurance policy as exempt under Tex. Ins. Code §§ 1108.001 and 1108.051 but offers no information as to the type of policy or the value. Simply claiming that the policy is 100% exempt without a value is insufficient. Debtor must amend her exemptions within 14 days of entry of this Order to provide proof of what type of life insurance policy it is and give its current value if any.

#### CONCLUSION

Debtor was domiciled only in Texas during the 730-day statutory period under § 522(b)(3)(A) and therefore may choose Texas state exemption laws. The Big Meadows Property is not Debtor's homestead under Texas law and therefore not exempt from the bankruptcy estate. Debtor's $416.35 in the Mid Oregon Credit Union checking account is exempt under 42 U.S.C.

§ 407. Debtor shall amend her exemptions to provide proof of what type of life insurance policy she is claiming as exempt and provide its current value if any within 14 days of entry of this Order.

IT IS **THEREFORE ORDERED** that Trustee's Second Amended Objection to Exemption is **GRANTED IN PART** and **DENIED IN PART**.

IT IS **FURTHER ORDERED** that Debtor shall amend her schedules in accordance with this Order within 14 days of its entry.

# # #